UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-62596-CV-LENARD/O'SULLIVAN

RICSHONDA HANKERSON,

    Plaintiff,

v.

FIVE STAR QUALITY CARE-FL, LLC
d/b/a THE COURT AT PALM AIRE,

    Defendant.
_____/

## ORDER[1]

THIS MATTER came before the Court on the Defendant's Motion to Dismiss Or, in the Alternative, Stay this Action and Compel Arbitration and Memorandum in Support (DE# 13, 12/9/16). On July 6, 2017, the Court held an evidentiary hearing. The Court admitted into evidence the parties' Exhibits 1 through 7. The defendant presented the testimony of Mitchell Beam and Jacynth "Brenda" Neal. The plaintiff testified on her own behalf and presented the testimony of Christa Brooks and Robin Davis.

## FINDINGS OF FACT

The defendant operates senior living communities including nursing homes and assisted living facilities. In 2011, the plaintiff began working for the defendant as a weekend charge nurse. During this time, the plaintiff only worked for the defendant on weekends. As a weekend charge nurse, the plaintiff did not use a company-issued

---

[1] The parties have consented to magistrate judge jurisdiction for the undersigned to conduct an evidentiary hearing and to issue an Order on the instant motion. See Joint Notice of Consent to Magistrate [Judge] Jurisdiction for Evidentiary Hearing (DE# 35, 6/8/17) and Amended Referral Order (DE# 36, 7/6/17).

email address. The defendant never communicated with the plaintiff through email when the plaintiff was a weekend charge nurse.[2]

In 2012, the defendant began a company-wide roll out of an employment arbitration agreement. In the spring of 2012, the defendant held a meeting where the arbitration agreement was discussed. The plaintiff did not attend this meeting. The plaintiff never attended any of the meetings held by the defendant while she was a charge nurse because the defendant's meetings took place on weekdays and the plaintiff worked full-time at another company during the week.

During meetings, the defendant provided sign-in sheets. Employees who attended the meetings were expected to sign the sign-in sheets. However, in practice, some employees who did not attend the meetings also signed the sign-in sheets. The sign-in sheets were kept by the Human Resources Manager. A second copy of the sign-in sheets were kept in another location. The defendant was unable to locate a sign-in sheet for the meeting wherein the arbitration agreement was addressed.

Because the plaintiff worked during the weekends at that time, pertinent information discussed during the meetings would be communicated to her through packets. The plaintiff did not receive a packet concerning the arbitration agreement.

As a charge nurse, the plaintiff was not tasked with distributing the defendant's Human Resources policies. The plaintiff's work focused on the clinical aspects of

---

[2] The defendant presented a document (Exhibit 2) which purportedly showed that the plaintiff received the arbitration agreement by email. Exhibit 2 bears no reference to an arbitration agreement. Moreover, the date on the document is May 15, 2012 and the evidence presented at the evidentiary hearing showed that the plaintiff did not use a company-issued email address until she was promoted to Director of Nursing in 2013.

nursing such as compliance with the regulations of the Florida Agency for Health Care Administration ("AHCA").

After the roll out, the arbitration agreement became part of the forms to be signed and/or completed by new hires. The plaintiff did not put together the new hire package and did not review the new hire package once it was signed by new employees.

In 2013, the plaintiff was promoted to Director of Nursing ("DON"). The plaintiff began using a company email address and the defendant sometimes communicated with the plaintiff through email when the plaintiff was the DON.

Employee files were kept in the plaintiff's office and the plaintiff along with the Human Resources Manager would periodically review the employee files. The plaintiff would review the files to ensure compliance with AHCA regulations, updates to nurses' licenses, CPR certifications and other clinical matters. The plaintiff did not review the employee files for arbitration agreements.

The plaintiff's employment with the defendant ended in March 2016. The plaintiff did not recall receiving an arbitration agreement during her employment with the defendant. The plaintiff did not recall signing an arbitration agreement and the defendant did not provide the Court with an arbitration agreement signed by the plaintiff. The plaintiff became aware of the arbitration agreement after her employment with the defendant ended.

## ANALYSIS

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of arbitration agreements." <u>Employers Ins.</u>

of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir. 2009) (citing Perry v. Thomas, 482 U.S. 483 (1987)). At issue in the instant case is whether the parties entered into an arbitration agreement. "Whether an arbitration agreement was formed is governed by state contract law." Grant v. Morgan Stanley Smith Barney, LLC, No. 16-81924-CIV, 2017 WL 1044484, at *2 (S.D. Fla. Mar. 20, 2017). "Under Florida law, a contract is made when the three elements of contract formation are present: offer, acceptance, and consideration." Nationmotor Club Inc. v. Stonebridge Cas. Ins. Co., No. 10-CV-81157, 2013 WL 6729664, at *9 (S.D. Fla. Oct. 29, 2013). As the party seeking to enforce the arbitration agreement, the burden is on the defendant to establish by a preponderance of the evidence the existence of an arbitration agreement. Schoendorf v. Toyota of Orlando, No. 608-CV-767-ORL-19DAB, 2009 WL 1075991, at *10 (M.D. Fla. Apr. 21, 2009).

In the instant case, the defendant has failed to carry its burden of proof. The defendant has failed to show by a preponderance of the evidence that an agreement to arbitrate exists between the parties. The evidence presented at the evidentiary hearing shows that the plaintiff never received a copy of the arbitration agreement and was not otherwise aware of the existence of any arbitration agreement during her employment with the defendant. While the defendant held a staff meeting wherein the arbitration agreement was discussed, there is no evidence that the plaintiff attended that meeting. In fact, the plaintiff was working full-time at a different location at the time of that meeting. The defendant also claims that it provided the plaintiff with a copy of the arbitration agreement by company email in 2012. However, the plaintiff did not use a company-issued email address until 2013, when she was promoted to DON. The

defendant did not present sufficient evidence to contradict the plaintiff's testimony that she did not receive a copy of the arbitration agreement and that she was not aware of the existence of an arbitration agreement during her employment with the defendant.

In sum, the defendant has failed to prove that the plaintiff received a copy of the arbitration agreement or that the terms of the arbitration agreement were otherwise communicated to the plaintiff. Accordingly, the defendant has not met its burden to show that an agreement to arbitrate exists between the parties.

## CONCLUSION

Based on the foregoing, it is

ORDERED AND ADJUDGED that the Defendant's Motion to Dismiss Or, in the Alternative, Stay this Action and Compel Arbitration and Memorandum in Support (DE# 13, 12/9/16) is **DENIED**.

DONE AND ORDERED, in Chambers, at Miami, Florida this 7 day of July, 2017.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Lenard
All counsel of record

5